**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------------X
GLORIA GAYNOR AND ROBIN RANDALL,

                  Plaintiffs,

      vs.                                  **AMENDED COMPLAINT**

JOEL DIAMOND, individually and a/k/a
JOEL DIAMOND ENTERTAINMENT and,      Case No: 24cv05690 (KPF)
SILVER BLUE PRODUCTIONS, LTD.,
SILVER BLUE RECORDS, SILVER BLUE
MUSIC, LTD., and OCEAN BLUE MUSIC LTD.,

                  Defendants.
--------------------------------------------------------------------------------X

       Plaintiffs through their undersigned attorneys, Drohan Lee LLP, hereby complain

of Defendants as follows:

<u>**NATURE OF THE ACTION**</u>

1.     By this action, two well-known recording artists, including a cultural icon of the

Twentieth Century, Gloria Gaynor, seek damages and equitable relief arising out

of Defendants' continuous, systematic and callous disregard of Plaintiffs' legal

rights and interests. Despite a relationship that should have permitted Claimants to

focus upon their art while trusting and relying upon Defendants' fiduciary integrity

and clearly written contractual promises, Defendants utterly failed to live up to

their obligations to keep Plaintiffs apprised of how their work was being licensed

and used, while wrongfully exacting economic benefits they were not entitled to

by exploiting that very relationship. Defendants' malfeasance extended to

intentional acts of fraud and misrepresentation. Defendants having failed to

remedy their wrongdoing despite Plaintiffs' repeated requests, Plaintiffs have been

forced to bring this lawsuit to protect their intellectual property rights.

## JURISDICTION AND VENUE

2.      This Court, pursuant to 28 U.S.C. §1338(a), 28 U.S.C. §§ 1331 and 1367 has

jurisdiction over this action without regard to the amount in controversy.

3.      This Court has personal jurisdiction over each Defendant either because the

Defendant conducts business in or maintains operations in this District or is an

individual who is either present in this District for jurisdictional purposes or has

sufficient minimum contacts with this District as to render the exercise of

jurisdiction over defendant by this Court permissible under traditional notions of

fair play and substantial justice.

4.      This is a civil action seeking damages and injunctive relief for infringement under

the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338

(a) and (b) in that the case arises under the laws of the United States pursuant to

the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*.

6.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant

to 28 U.S.C. § 1367(a). The federal and state claims alleged herein are so related

that they form part of the same case or controversy.

7.      Venue is proper under 28 U.S.C. §1391(b)(2) because Defendants do business in

this Judicial District and/or because a substantial part of the events or omissions

giving rise to the claim occurred in this Judicial District.

## PARTIES

8.      Plaintiff Gloria Gaynor is a former resident of New York and currently a resident of New Jersey ("Gaynor").

9.      Plaintiff Robin Randall is a resident of California ("Randall").

10.     Upon information and belief Defendant, Joel Diamond ("Diamond") is and/or was at all relevant times an owner and officer of the corporate defendants and a current resident of California.

11.     Prior to becoming a resident of California, Diamond was a resident of New York during relevant time periods, residing at 401 E. 74th Street, New York, NY and then 220 Central Park South, New York, NY. During relevant time periods, Diamond sublet the 220 Central Park South address.

12.     Joel Diamond has and continues to do business as Joel Diamond Entertainment, an unincorporated business.

13.     Upon information and belief, Defendant Silver Blue Productions, Ltd (hereinafter "SB Productions"), is a domestic corporation organized under the laws of the State of New York and maintains an office at 3940 Laurel Canyon Blvd. St 441, Studio City, CA 91604.

14.     During relevant time periods SB Productions location was listed as 401 E. 74th Street, New York, NY.

15.     SB Productions was formed in February of 1970.  It was dissolved by Proclamation on June 26, 2002.  An Annulment of Dissolution was filed in November of 2003.  SB Productions was thereafter dissolved again by Proclamation in January of 2012 and remained dissolved until July of 2019.

3

16.     Upon information and belief, Defendant Silver Blue Music (hereinafter "SB Music"), was and/or is a domestic corporation organized under the laws of the State of New York and maintains an office at 401 E. 74th Street, New York, NY 10021

17.     SB Music was dissolved by proclamation in June of 2001. It continues, however to own certain copyrights and is signatory to third-party contracts and receives payments.

18.     Oceans Blue was dissolved by Proclamation in June of 2001.  It continues, however, to own certain copyrights and is signatory to third-party contracts and receives payments.

19.     Oceans Blue was dissolved by Proclamation in June of 2001.  It continues, however, to own certain copyrights and is signatory to third-party contracts and receives payments.

20.     Upon information and belief, Defendant Silver Blue Records (hereinafter "SB Records"), was and/or is a domestic corporation organized under the laws of the State of New York and maintains an office at 401 E. 74th Street, New York, NY 10021.

21.     SB Records was dissolved by Proclamation in June of 2001.  It continues, however to own certain copyrights and is signatory to third-party contracts and receives payments.

22.     Throughout relevant time periods, Diamond has marketed Plaintiffs' work in New York and attempted to sell his catalogue of music which included works of the Plaintiffs in dispute, to Memory Lane Music Group based in New York City. Some

of this during a time that his corporation was under a dissolution by proclamation.

23.  Separately, Diamond sought to work as a producer with other record labels located in New York City and individually worked with various publicists all located in New York City.

## GLORIA GAYNOR

24.  Gloria Gaynor's (hereinafter "Gaynor") legendary performance and recording career spans over 50 years, never losing momentum. The two-time GRAMMY® winner has achieved global stardom with hit songs in the charts in all five decades. She has also shared her talent through roles in film, television, and the Broadway stage.

25.  Gloria continues to tour the world with her ten-piece band performing in the USA, UK, Europe, South America, and beyond. She has performed at sold-out concert venues and headlined music festivals around the globe such as the Heineken Jazzaldia Festival (Spain), World Expo 2020 (Dubai), Boogietown Festival (UK), Carnaval de Mazatlán (Mexico), Starlite Festival (Spain), the Tecate P'al Norte Festival (Monterrey, Mexico) and The Big E (USA).

26.  Gloria has been honored in the past several years by the CCU's Women in Leadership Conference and by Dowling College, who presented her with an Honorary Doctorate of Music. She was presented with the Martin Luther King, Jr. Award by the Consulate General of Israel, Ido Aharoni, who stated that Gloria has "inspired millions with her music to empower themselves" over the years. Gloria was also honored by the Library of Congress on May 6, 2017, after having the recording of her global anthem, "I Will Survive," inducted in the library's

collection of recordings with American historical & cultural significance in 2016. That same year Gloria was inducted into the New Jersey Hall of Fame at a special ceremony in Asbury Park, New Jersey. And in the Summer of 2019, Gloria was invited to sing the "Star-Spangled Banner" by U.S. astronaut and American treasure, Buzz Aldrin, at the APOLLO XI 50th Anniversary Gala.

## **ROBIN RANDALL**

27.    Robin Randall (hereinafter "Robin") continues to be an active composer who during the period relevant to this action collaborated with her mother as part of a two-person songwriting team. Robin Randall's mother Judithe Randall died on April 3, 2002.

28.    Robin has been a professional songwriter, recording artist, performance pianist and music instructor for over 45 years, having had her first song recorded for a CBS TV movie at only 17 years old. Throughout this career Robin has received numerous awards and accolades, including for her songs appearing on platinum and gold albums, as well as gold singles.

29.    Robin's long list of credits includes the hits "Tomorrow Doesn't Matter Tonight" by Starship, "Where Are You Now" by Roxus and "Last Time" by Agnetha Faltskog. Robin has also written for and had music featured in numerous television shows and movies including Baywatch, Starting Over, Tough Love, Confessions of a Teen Idol, and The Amy Fisher Story. In 2005, Robin worked with American Idol Season 7 finalist, Brooke White, on her debut album "Songs from the Attic."

30.    Also, an accomplished writer, Robin co-authored the book "Lead Sheet Bible" published by Hal Leonard Publishing. Robin continues encouraging the love of

music by teaching at the Grove School of Music, Musicians Institute, and The Songwriting School of Los Angeles for over 35 years. She has received the Teacher of the Year Award three times from the Musicians Institute.

## CONTRACT WITH GAYNOR

31.    Sometime in 1982 Gaynor and her ex-husband, Linwood Simon, were introduced to Joel Diamond.

32.    Diamond acknowledged that in 1983, a recording agreement was entered into between Gaynor and SB Productions.

33.    Defendants have maintained this was a work for hire. Gaynor has denied that any work created, recorded and performed by her was a work for hire for SB Productions.  Plaintiffs has on several occasions requested Defendants to provide her a true copy of any effective and controlling Gaynor Production Agreement but Defendant to date has not provided any such or similar document.

34.    In response to a letter written on behalf of Gaynor, Diamond, through his attorney, acknowledged that at the very least he had an obligation to pay royalties on "sales of records."  He contends that he was assigned the sound recording copyrights in perpetuity.

35.    The precise dates and nature of the agreements between Defendants and Plaintiff Gaynor as well as Defendants and third parties are currently unknown to Gaynor, as this information is in the sole possession, custody and control of Defendants and, although requested by Plaintiffs' representatives, Defendants have failed to produce such documentation to Plaintiffs.

36.    Despite requests, the recording agreement has not been provided to Gaynor. At the

7

time of the agreement which Defendants allege exists and controls, Gaynor was married to her former manager. The recording agreement would have required payment of royalties to Gaynor as writer and recording artist.

37.    There was a 1983 recording agreement between CBS Records, a Division of CBS Records, Inc. (now known as SONY Music) and SB Productions. (the "CBS Agreement," Annexed as **Exhibit A**") for the song "I Am What I Am".   A significant royalty provision exists in ¶9 of the CBS Agreement.

38.    Pursuant to ¶18 should SB Productions not exist, royalty rights revert to the artist, in this case Gaynor.  Considering the dissolution of SB Productions, rights under the contract are reverted to Gaynor.

39.    In response to Gaynor's request for disclosure of earnings and the contract, Diamond provided SONY statements from July 1, 2022 to June 30, 2023 to justify his contention that Gaynor is not owed monies because she is not in a "recouped position".  This is despite  the passage of over 30 years during which Gaynor has been one of the most successful artists globally and her songs heard continuously throughout those years.

40.    Diamond has made no statement as to how much Gaynor had to pay to be in a "recouped position" (which by the most reasonable estimates would have occurred before 1990), nor how much money was paid to Diamond for the past six years at the very least. Weekly analytics maintained by Silver Blue Productions, Ltd showed that "I Am What I Am" alone had over 32,000 streams. The same song in club version had an additional 22,800 streams.

41.    Gaynor has continued to own all intellectual rights to all songs written by her and

performed by her. At times she would be paid through Linwood Maxwell Music, listed as copyright owner.  In one instance Diamond listed the copyright owner as Gloria Gaynor Music.

42.     Gaynor divorced Linwood Simon in 2005.

43.     Any royalties from music created and performed by Gaynor were to be her property as part of her divorce from Linwood Simon.

44.     Diamond improperly listed himself as a co-author of at least one song in a copyright registration.  In the copyright registration for "More Than Enough" Diamond listed himself as co-author. At no time did Gaynor write a song with Diamond. To her knowledge, Diamond has never been a songwriter.

45.     In all of the copyrights filed by Diamond with respect to Gloria Gaynor, she is either a performer and/or author.  Copyright owners listed include businesses either created by her ex-husband and/or her for payment of royalties, including Linwood Maxwell Music. In at least one instance the copyright owner is listed as Gloria Gaynor Music. Samples of the copyright registrations are attached as Exhibit "E."

46.     The copyright registrations do not list SB Productions as copyright holders, yet it is SB Productions obtaining compensation.  No records of any assignment to this company have ever been disclosed or filed with the copyright office.

47.     SB Productions has entered into at least two licensing agreements with respect to Gaynor's music.  For example, in February 2019 SB Productions (prior to the annulment of the dissolution) SB Productions entered into a synchronization license with The Works for use of the recording "I Am What I Am" in a Peugeot

commercial.

48.     Diamond attempted to hide the issues relating to his dissolution when he sought to not only reinstate SB Productions.  Diamond specifically sought counsel on how to legally "roll back" Silver Blue Music and Oceans Blue Music in 2018 into SB Productions, stating that the companies were dissolved, and he was worried about being sued due to the fact that he had so many songwriters and co-publishing agreement he was collecting royalties on.

49.     SB Productions, SB Music and Oceans Blue have asserted in catalogues issued by them that they own the masters of Gaynor's songs although SONY appears to own the masters.  These include:

| | |
|---|---|
| *After the Lovin'* | *You're All I Need to Get By* |
| *I am what I am* | *Strive* |
| *Bull's Eye* | *More Than Enough* |
| *Chain of Whispers* | *I've Been Watching You* |
| *Eeny-Meeny-Mack-A-Rack* | |

50.     SB Productions, SB Music and Oceans Blue have asserted in catalogues issued by them that they have a publishing right to Gaynor's songs:

| | |
|---|---|
| *You're All I Need to Get By* | *Strive* |
| *More Than Enough* | *Bull's Eye* |
| *Eeny-Meeny-Mack-A-Rack* | *Only In A Love Song* |
| *Chain of Whispers* | *I've Been Watching You* |

The works currently identified as being at issue are annexed hereto as **Exhibit C** to this Complaint and referred to as Gaynor Intellectual Property.

51.     Since the inception of the alleged recording agreement, despite Gaynor's repeated requests for an accounting thereof, Defendants have failed to pay any royalties, provide transparency as to who Gaynor's music was licensed to or any demonstration that Gaynor's music was protected.

52.     Payments have been made to Defendants in various amounts, but Defendants have concealed and suppressed all payments to Gaynor.

53.     Upon information and belief, these concealed payments to Defendants are part of a broad, long-standing process geared towards improperly suppressing the income due to Plaintiffs, strictly for the purpose of buttressing Defendants' own income to the detriment of their clients.

54.     Defendants have received, and continue to receive and retain, substantial advances from record companies, record clubs and third-party licensees without sharing any portion of such payments, or any royalty payments, with Plaintiff Gloria Gaynor.

55.     Defendants also have received, and continue to receive and retain, additional payments from third parties which are neither advances nor otherwise recoupable, which they also do not share with Plaintiff, and were not disclosed to Plaintiff.

56.     Defendants have wrongfully provided permission to third parties, without Plaintiffs' actual authority, to exploit Plaintiffs' songs and/or recordings in return for concealed payments which Defendants received and retained without paying portions thereof, or any royalty payments, to Plaintiffs.

## FRAUD AGAINST ROBIN RANDALL

57. On or about April of 2000 and continuing to the present, Diamond has fraudulently claimed ownership of copyrighted works owned by Robin and wrongfully, and without authority, entered into licensing agreements thereby.

58. Diamond knowingly and willingly distributed and continues to distribute, reproduce, and publicly display Robin's works and licenses others to do the same, despite having no authority to do so.

59. Diamond fraudulently induced, and otherwise wrongfully caused Judithe Randall to sign over her ownership rights to many copyrighted works, including but not limited to "*Forever Friends*," "*Just Friends*," "*Close My Eyes*" and "*Two Souls One Breath*," (The works currently identified as being at issue is annexed as Exhibit D to the Complaint and referred to as the "Robin Intellectual Property").

60. At the time that Diamond wrongfully affected to usurp ownership interest over her intellectual property, Judithe Randall was significantly ill and incapacitated. In or about the beginning of 2000, Judith Randall began to show significant signs of mental illness. She was put under the care of a physician.

61. In April of 2001 she was admitted into a mental institution called Thalians Clinic associated with Cedar Sinai Medical Center. Eventually she was diagnosed with paranoid schizophrenia and bipolar disorder. Joel Diamond visited Judithe Randall during which time several agreements were signed. It is believed Judithe Randall was coerced into signing not only her name but Robin Randalls.

62. Robin Randall has denied signing various agreements with Joel Diamond or any of the corporate defendants.

12

63.    Diamond, through fraud in the inducement and/or execution, gained control of the aforementioned copyrighted works of Judithe Randall. By misrepresenting the purpose and terms of the agreements, and the contents of written instruments, to a gravely infirm woman, Diamond induced Judithe Randall to sign over her interest in her copyrights to various works to which the rightful successor in interest is Robin Randall.

64.    The agreements believed to be signed by coercion included but are not limited to an Assignment/Sale of Copyright dated April 21, 2000 and May 25, 2000, Assignment of Notice of Copyright and Income, Sale of Acquired Assets dated May 25, 2000 and May 16, 2001. (All Agreements are annexed hereto as Exhibit B).

65.    By that time Cedars-Sinai Medical Center in Los Angeles and her physician stated that Judith Randall suffered continuously and had significant emotional liability and illness including anxiety, depression, and disorder of eating.  She was hospitalized in the inpatient psychiatric hospital during the 2000-2002 period.

66.    Judith Randall could not have signed any assignment agreements unless Diamond came to visit her as Robin Randall would have been present or had to supervise any signing otherwise.

67.    On or around April 2000 and continuing to the present day, Diamond publicly claims publication rights and ownership of Robin's copyrighted works including but not limited to, "*The Best of Whatever You Are*" (1994) and "*The Child Inside*" (1993).

68.   Diamond has listed himself as co-writer and owner of songs in which he had no actual involvement and were in fact written by Robin and/or Judith Randall.

69.   Plaintiff Robin Randall is one of the executors of her mother's estate and is the rightful owner of the copyrighted compositions registered by her deceased mother Judithe Randall. Robin has registered many of her musical compositions with the Copyright Office, including the compositions and recordings at issue here.

70.   Defendants have committed, caused, assisted, aided, abetted, and induced a continuing set of acts constituting copyright infringement. Defendants knowingly and willfully distributed and continue to distribute, reproduce, and publicly display Plaintiff's Works and affects to license others to do the same, despite having no authority to do so.

71.   As early as April 2000 and continuing to the present day, Defendant publicly professed and claimed to own publication rights and ownership of Plaintiff's Copyrighted Works including but not limited to, "*The Best of Whatever You Are*," "*Tough Boy*," "*Tough Boy ft. Randall Cuomo*," and "*The Child Inside*."

## **FACTS COMMON TO ALL CAUSES OF ACTION**

### **Systemic Breaches by Defendants**

72.   Defendants have licensed, without rightful authority, the recordings at issue in this action to various third parties for third-party exploitation of those recordings. In

nearly all instances, Defendants have to this day failed to properly credit Plaintiffs' royalty accounts for such exploitation.

73. Defendants have released and/or caused to be released to music carriers containing one or more recordings by and for which royalties are due Plaintiffs and for which Defendants have failed to provide any information or payment to Plaintiffs.

74. Defendants and/or its licensees have authorized the digital distribution of the aforementioned music in foreign territories without providing any information or payment regarding the same to Plaintiffs.

75. Defendants have collected royalties from ASCAP. Defendants were obligated, under contract, statute and common law, to pay a portion of such royalties to Plaintiffs. Defendants have not provided any information to Plaintiffs regarding the amount of income due Plaintiffs under the ASCAP, nor payment therefore.

76. It was discovered by Plaintiff Randall, for example, that royalties from ASCAP were received from the songs "Forever Friends", "Child Inside" and "BayWatch Cues", all written by Judith Randall and Robin Randall.  It is alleged that an

agreement for these songs were also entered into by Diamond with Universal Music Group.

77.     Among the songs marketed for sale by Diamond "Bullseye", "I Am What I Am" and "After the Loving", performed by Gloria Gaynor and/or written by Gloria Gaynor.

## **FIRST CAUSE OF ACTION**

### **(BREACH OF CONTRACT)**

78.     To the extent applicable, Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

79.     By any agreement, Defendants are required to be transparent and report sales and earnings to Plaintiffs.

80.     Plaintiff, Gloria Gaynor has performed each and all of the conditions, covenants and obligations imposed upon her under the terms of the Subject Contracts.

81.     Defendants have repeatedly breached its obligations to Plaintiff, Gaynor by failing to submit accurate and truthful reports and royalty payments to Plaintiffs, by, among other things: inappropriately failing to report to Plaintiffs all payments received from third parties; failing to report to Plaintiffs all sales of the relevant songs and recordings; and, failing to provide Plaintiffs, when requested, of pertinent information and documentation concerning the licensing of the relevant recordings.

82.     Plaintiff has not had the opportunity to audit Defendants in an effort to determine whether Defendants owe any royalties as required.

83. Defendants have refused to provide all records needed to calculate the amount of underpayments, but based on the records available, Plaintiffs are aware that over one million dollars is owed.

84. As a direct and proximate result of Defendants' acts and omissions, as alleged herein, Plaintiff Gaynor has suffered substantial damages, together with accrued interest thereon at the legal rate, in an amount to be proven at trial.

**<u>SECOND CAUSE OF ACTION</u>**
**(DECLARATORY JUDGMENT FOR TERMINATION AND RESCISSION)**

85. To the extent applicable, Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

86. The Subject Agreements have been pervasively and systemically breached by Defendants and Defendants have acted in callous disregard to the contractual and other rights of Plaintiffs.

87. In the case of Randall, the contracts were fraudulently and wrongfully obtained by inducing an incapacitated person to sign documents whose content and purpose she was incapable of understanding, and to execute those documents for both herself and her daughter without her daughter's knowledge.

88. Defendants have continually failed to properly account to Plaintiffs, and in many cases solely for the purpose of promoting their own interest.

89. Defendants knowingly made representations and rendered statements to Plaintiffs in a manner directed at convincing Plaintiffs that no monies are owed them.

90. Defendants have known that these statements are false.

91.     In so doing, Defendants have made these representations with the hope of having Plaintiffs rely on such knowingly false statements.

92.     Despite the knowledge that they are cheating Plaintiffs from income they have rightfully earned, Defendants have not ceased, corrected or remedied their improper and false accountings, concealments or underpayments.

93.     By virtue of the foregoing, the Agreements between Plaintiffs and Defendants have been materially breached, should be terminated, and should be rescinded.

94.     Defendants have received an overwhelming windfall from the Agreements with Plaintiffs and the fraud in the inducement and/or execution committed upon Randall's mother, far in excess of the amount to which Defendants were entitled. Defendants have continued their systemic and pervasive breaches, which undercut the entire purpose of entering into the Agreements set forth above.

95.     Plaintiffs are entitled to a declaration that the Agreements between Defendants and either Plaintiff are rescinded, or at the least terminated, with all rights therein and thereto, being returned to Plaintiffs.

## THIRD CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY)

96.     To the extent applicable, Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

97.     Commencing as early as 1983 Gaynor has had a special relationship with Defendants and their predecessors and/or successors in interest. To this day, Gaynor's name and likeness adorn Defendants' publicity material.

98.     Gaynor once entrusted her of her works to Defendants and their predecessors and/or successors in interest.

18

99.    Plaintiff Gaynor continued to rely on Defendants and their predecessors and/or successors-in-interest to ensure that the recordings at issue herein were properly administered and ensure that Plaintiffs would receive the benefit from the contract and relationship initiated more than twenty (20) years ago.

100.    Upon information and belief, Defendants' improper dealings have significantly depleted the income that Plaintiffs would otherwise be entitled to receive.

101.    Because of Defendants' exclusive and total control over certain distribution, sale, licensing and/or exploitation of the recordings of Gaynor, and Defendants' obligation to accurately and fully account for, report and pay to Plaintiff all royalties due and owing Plaintiffs from said exploitation of the Gaynor recordings, Defendants placed themselves in a position of trust and confidence with regard to Gaynor.

102.    Defendants had a duty to account fairly, accurately and promptly for all royalties owed Plaintiff under the aforesaid agreement, not to act in its self-interest to the detriment of Plaintiff or to deprive Plaintiff of the benefits under the Subject Contract.

103.    As a result of Defendants' assumption of the fiduciary obligation to account and pay royalties to Plaintiffs, Defendants owed a duty to Plaintiff Gaynor to act in the highest good faith; to perform his duties in a competent and proper manner; to make full disclosure of all material facts to Plaintiffs; to refrain from engaging in conduct adverse to Plaintiffs; and, to account promptly and accurately for all royalties generated under the agreement(s).

104.   By putting its own interests above those of the Plaintiffs, Defendants have breached their fiduciary duty to Plaintiff Gaynor.

105.   As a direct and proximate result of Defendants' breach of fiduciary duty and breach of trust and confidence, Plaintiff has suffered substantial damages, together with accrued interest thereon at the legal rate, to be proven at trial.

106.   Commencing as early as 2000 Randall's works have been used and marketed by Joel Diamond, creating an unwanted special relationship with Defendants and their predecessors and/or successors in interest.

107.   Randall did entrust at least one of her works to Defendants and their predecessors and/or successors in interest.

108.   Plaintiff Randall was forced to rely on Defendants and their predecessors and/or successors-in-interest to ensure that the songs used for the show "Baywatch" were properly administered and ensure that Plaintiffs would receive the benefit from the contract and relationship initiated more than twenty (20) years ago.

109.   Upon information and belief, Defendants' improper dealings and use of Randall's works have significantly depleted the income that Plaintiff would otherwise be entitled to receive.

110.   Because of Defendants' exclusive and total control over certain distribution, sale, licensing and/or exploitation of Randall's songs, and Defendants' obligation to accurately and fully account for, report and pay to Plaintiff all royalties due and owing Plaintiffs from said exploitation of the Randall's songs, Defendants placed themselves in a position of trust and confidence with regard to Randall.

111.    Defendants had a duty to account fairly, accurately and promptly for all royalties owed Plaintiff Randall under any aforesaid agreement, not to act in its self-interest to the detriment of Plaintiff or to deprive Plaintiff of the benefits under the Subject Agreements.

112.    As a result of Defendants' assumption of the fiduciary obligation to account for and pay royalties to Plaintiffs, Defendants owed a duty to Plaintiff Randall to act in the highest good faith; to perform their duties in a competent and proper manner; to make full disclosure of all material facts to Plaintiff; to refrain from engaging in conduct adverse to Plaintiff; and, to account promptly and accurately for all royalties generated under the agreement(s).

113.    By putting its own interests above those of the Plaintiff, Defendants have breached their fiduciary duty to Plaintiff Randall.

114.    As a direct and proximate result of Defendants' breach of fiduciary duty and breach of trust and confidence, Plaintiff has suffered substantial damages, together with accrued interest thereon at the legal rate, to be proven at trial.

### FOURTH CAUSE OF ACTION
#### (FRAUD)

115.    To the extent applicable, Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

116.    Diamond has a number of assignments allegedly signed by Judith Randall and Robin Randall which are maintained to be fraudulent.

117.    These assignments were executed at a time when Judith Randall was incapacitated.

118.    Robin maintains that these assignments were not signed by her, and that Diamond fraudulently had Judith Randall sign her name to these documents.

119.    It is alleged that Diamond fraudulently re-registered certain works with ASCAP naming Silver Blue as publisher and at times misrepresenting himself as author/owner of certain songs.

120.    As a direct and proximate result of Defendant's fraud Plaintiff has suffered substantial damages, together with accrued interest thereon at the legal rate, to be proven at trial.

## FIFTH CAUSE OF ACTION
### (COPYRIGHT INFRINGEMENT)

121.    To the extent applicable, Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

122.    Diamond has listed himself and/or caused his companies to be listed as publishers, owners, and authors on various works for which there is and has never been any agreement between the parties.

123.    It is maintained that for those works Defendants have infringed upon the intellectual property rights including but not limited to copyright infringement, of the Plaintiffs.

124.    It is maintained that Diamond has improperly copyrighted works written and owned by Plaintiffs, by listing himself as co-author.

125.    Diamond attempted to sell and license works belonging to Plaintiff despite his not being the sole copyright owner.

126.    Plaintiffs own and/or are the exclusive U.S. licensees, and otherwise hold exclusive rights in the songs and performances at issue, which are an illustrative and non-exhaustive list of some of Plaintiffs' works infringed by Defendants.

127.    In the case of Robin Randall, all the songs have been submitted to and publicly

indexed by the U.S. Copyright Office pursuant to 17 U.S.C. § 1401.

128. By the acts set forth above, Defendants have infringed Plaintiffs' exclusive rights in protected songs, by reproducing and distributing them to third parties in violation of 17 U.S.C. §§ 106(2) and 1401(a)(1).

129. Defendants did not have any authorization, permission, license, or consent to reproduce, distribute or otherwise use the works written by Randall.

130. Each such infringement by Defendant constitutes a separate and distinct act of infringement.

131. Defendants' acts of infringement are willful, intentional, purposeful, and in disregard of and indifferent to the rights of Plaintiffs.

132. As a direct and proximate result of the infringements by Defendants Plaintiffs are entitled to their damages and to any profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Plaintiffs are entitled to statutory damages of up to $150,000 for each protected property infringed, or in such other amount as may be proper under 17 U.S.C. §§ 504(c).

133. Plaintiffs are entitled to attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

134. As a result of Defendants' conduct, Plaintiffs have sustained and continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

135. Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in Plaintiffs' intellectual property.

136. Plaintiffs are entitled to injunctive relief to restrain and enjoin infringing conduct.

## SIXTH CAUSE OF ACTION
### (MISREPRESENTATION)

137.    To the extent applicable, Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

138.    Defendant Diamond and SB Productions have misrepresented their ownership and right to collect royalties.

139.    Defendants Diamond and SB Productions have misrepresented that royalties are not owed on Plaintiffs' intellectual property.

140.    Among the misrepresentations are statements (i) that Diamond co-wrote the song "More than Enough"; (ii) that SB Productions owns the masters to several of Gaynor's songs which are held by SONY;  and (iii) that SB Productions hold the publishing rights to Randall's songs.

141.    That these misrepresentations continue to date and appear in recent articles and interviews.

142.    As a direct and proximate result of Diamond's fraudulent contract with an incompetent person, Plaintiff has suffered substantial damages, together with accrued interest thereon at the legal rate, to be proven at trial.

## SEVENTH CAUSE OF ACTION
### (ACCOUNTING FOR PROFITS - UNJUST ENRICHMENT)

143.    To the extent applicable, Plaintiffs reallege and incorporate by reference all of the foregoing paragraphs as though fully set forth herein.

144.    Inasmuch as the Agreements will be deemed terminated, the parties are entitled to be placed in the position they would otherwise be in had Defendants acted in accordance with such termination.

145.    Upon information and belief, Defendants have received well in excess of any consideration it provided to Plaintiff under the Agreements.

146.    To the extent applicable, Plaintiff's reallege and incorporate by reference all the foregoing paragraphs as though fully set forth herein.

147.    Defendant, Diamond misrepresented the nature and content of documents presented to Plaintiff's mother, Judithe Randall. Specifically, Defendant, Diamond compelled the then incompetent Judithe Randall to sign rights to her copyrighted works to Defendant entities.

148.    Diamond's representations that they are the legal owner of Judithe Randall's copyrights are materially false and misleading, because at the time these copyrights were signed to Defendant, Judith Randall was admitted to a mental institution for treatment of diagnosed paranoid schizophrenia and bipolar disorder.

149.    Diamond knew these representations and inducements were false and fraudulent when Diamond made them because of the infirmity and incompetence of Judithe Randall.

150.    As a direct and proximate result of Diamond's fraudulent contract with an incompetent person, Plaintiff has suffered substantial damages, together with accrued interest thereon at the legal rate, to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for relief and respectfully request that the Court:

a) Award to plaintiffs

(1) damages sufficient to compensate Plaintiffs for Defendants' actions, but in any event no less than no less than $2,000,000.00 on the First, Second, Third Fourth, Fifth, Sixth and Seventh Causes of Action;

(2) Full costs for this action, including reasonable attorney's fees;

(3) An accounting to determine all royalties owed to Plaintiffs;

(4) Prejudgment and post judgment interest on all sums; and

(5) Punitive damages.

b) Declare that the Subject Contracts have been materially breached, terminated and that Plaintiffs are the owners of the music, songs and/or recordings made thereunder;

c) Grant a preliminary injunction enjoining and preventing Defendants from continuing to distribute, license and use the intellectual property at issue in this action without Plaintiff's knowledge; and

d) Award plaintiffs any further relief as this Court may seem just and proper;

e) Plaintiffs hereby request a trial by jury for all claims herein.

Dated:  December 13, 2024

Respectfully Submitted,

**Drohan Lee LLP**
*Attorneys for Plaintiffs*

By:/Vivian Rivera Drohan/
    Vivian R. Drohan
5 Penn Plaza, 19th Floor
New York, New York 10001
Tel: (212) 710-0004
vdrohan@dlkny.com