UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GLORIA GAYNOR and ROBIN RANDALL,

                    Plaintiffs,

              -v.-

JOEL DIAMOND, individually and a/k/a
JOEL DIAMOND ENTERTAINMENT, and,
SILVER BLUE PRODUCTIONS, LTD., SILVER
BLUE RECORDS, SILVER BLUE MUSIC,
LTD., and OCEAN BLUE MUSIC LTD.,

                    Defendants.

---

24 Civ. 5690 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

        Plaintiffs Gloria Gaynor ("Gaynor") and Robin Randall ("Randall")

(collectively, "Plaintiffs") bring this action against Defendants Joel Diamond

("Diamond") (individually and also known as Joel Diamond Entertainment),

Silver Blue Productions, Ltd. ("SBP"), Silver Blue Records ("SBR"), Silver Blue

Music, Ltd. ("SBM"), and Ocean Blue Music Ltd. ("OBM") (collectively,

"Defendants"). Plaintiffs assert claims for copyright infringement under the

Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, and common-law claims for

breach of contract, breach of fiduciary duty, fraud, misrepresentation, and

unjust enrichment. Plaintiffs additionally seek a declaratory judgment for

contract termination and rescission. Defendants have moved to dismiss

Plaintiffs' First Amended Complaint (the "FAC") for lack of standing under

Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim upon

which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

Alternatively, Defendants have moved to transfer this case to the United States

District Court for the Central District of California pursuant to 28 U.S.C.

§ 1404.  For the reasons set forth in the remainder of this Opinion, the Court

grants Defendants' motion to transfer and declines to rule on Defendants'

motion to dismiss.  Whether Plaintiffs' claims will survive Defendants' motion

to dismiss will be an issue for the transferee court to decide.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    The Parties

Plaintiffs Gloria Gaynor, a resident of New Jersey, and Robin Randall, a

resident of California, are professional recording artists.  (FAC ¶¶ 1, 8-9).

Defendant Joel Diamond, a resident of California, is a "music producer, writer,

and publisher in the recording industry."  (Diamond Decl. ¶ 3).  He also

conducts business as Joel Diamond Entertainment, an unincorporated entity,

and serves as President of Defendant SBP.  (FAC ¶ 12; Diamond Decl. ¶ 4).

---

[1]    This Opinion draws its facts from the First Amended Complaint ("FAC" (Dkt. #30)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009).  The Court also relies, as appropriate, on certain of the exhibits attached to the FAC ("FAC, Ex. [ ]"), each of which is incorporated by reference in the FAC.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference in or integral to a complaint).  The Court also considers: (i) the Declaration of Joel Diamond in support of Defendants' motions to dismiss and transfer venue ("Diamond Decl." (Dkt. #33-2)); (ii) the Second Declaration of Joel Diamond in support of Defendants' motions ("Diamond Second Decl." (Dkt. #40-1)) and the exhibits attached thereto; and (iii) the Declaration of Rebecca Holden submitted in opposition to Defendants' motions ("Holden Decl." (Dkt. #39)) and the exhibit attached thereto.  *See Mohsen* v. *Morgan Stanley & Co. Inc.*, No. 11 Civ. 6751 (PGG), 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) ("In deciding a motion to transfer, a court may consider material outside of the pleadings." (collecting cases)).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motions to dismiss and to transfer venue as "Def. Br." (Dkt. #33-1); to Plaintiffs' memorandum of law in opposition to the motions as "Pl. Opp." (Dkt. #36); and to Defendants' reply brief as "Def. Reply" (Dkt. #40).

2

SBP is incorporated in New York but maintains its headquarters, including all officers and employees, in Los Angeles, California. (FAC ¶ 13; Diamond Decl. ¶ 4). According to Diamond, "SBP has not maintained an office or other physical location in the State of New York in over 25 years"; has never owned any real estate in New York; and has not directed any business activities specifically to New York since approximately 1989. (Diamond Decl. ¶ 5). SBP is registered to conduct business in California; pays taxes in California; maintains its bank accounts exclusively in California; and keeps its books and records in California. (*Id.* ¶¶ 5-6, 13).

Diamond previously served as President of three now-dissolved corporate entities, OBM, SBR, and SBM, each of which was incorporated in New York. (*See* Diamond Decl. ¶¶ 16, 18, 20; Def. Br. 18). SBR was dissolved by proclamation on September 26, 1990. (Diamond Decl. ¶ 18; *see also* Dkt. #33-5). OBM and SBM were dissolved by proclamation on June 27, 2001. (Diamond Decl. ¶¶ 16, 20; *see also* Dkt. #33-4, 33-6).[2] Plaintiffs concede that these entities have been dissolved. (*See* Pl. Opp. 2). Diamond contends that all

---

[2]    The Court takes judicial notice of certain entries for OBM, SBR, and SBM maintained in the New York Department of State's Corporation and Business Entity Database (the "Database"). (*See* Dkt. #33-4 through 33-6). A court may take judicial notice of "all public documents, promulgated by or binding on a government agency, and not subject to reasonable dispute." *Richardson* v. *N.Y.C. Bd. of Educ.*, 711 F. App'x 11, 14 (2d Cir. 2017) (summary order). A corporation's status in the Database is a matter of public record of which this Court may take judicial notice. *See, e.g.*, *Paysafe Partners LP* v. *Merch. Payment Grp. LLC*, No. 19 Civ. 495 (LGS), 2019 WL 1986607, at *1 n.1 (S.D.N.Y. May 6, 2019) (taking judicial notice of a corporation's status in the Database). The Court takes judicial notice of these public records "in order to determine what statements [the public records] contained ... not for the truth of the matters asserted." *Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks and emphases omitted) (quoting *Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

three corporations assigned their assets to SBP upon dissolution, including their copyright and publishing royalties. (Diamond Decl. ¶¶ 16, 18, 20). The record before the Court does not include any documents to confirm (or refute) such assignments.

### 2.    Gaynor's Allegations

#### a.    The Alleged Contract Between Gaynor and SBP

Gaynor alleges that she entered into a recording agreement with SBP in 1983. (FAC ¶ 32). However, she does not possess a copy of this contract and asserts that it is in the "sole possession, custody and control of Defendants." (*Id.* ¶ 35). While Gaynor does not know the "precise dates and nature of the agreements," she maintains that the contract entitled her to royalty payments as a writer and recording artist, and denies that the arrangement was a "work for hire." (*Id.* ¶¶ 33, 35-36). Although Gaynor claims that Diamond acknowledged SBP's agreement with her (*id.* ¶ 32), Defendants did not produce the agreement in this suit, nor do they admit its existence in their briefs (*id.* ¶¶ 33, 36).

#### b.    The CBS Agreement

On December 1, 1983, CBS Records (now SONY Music) entered into a recording agreement with SBP regarding the composition *I Am What I Am* (the "CBS Agreement"). (FAC ¶ 37; *id.*, Ex. A). While Gaynor was not a party to the agreement, she signed an "Artist's Assent and Guaranty," assenting to the execution of the agreement and agreeing to deliver master recordings. (*Id.*, Ex. A). The CBS Agreement provides for royalty payments to SBP. (*Id.* ¶ 37;

*id.*, Ex. A).  It also outlines royalty reassignment terms in the event of SBP's

dissolution.  (*Id.* ¶ 38; *id.*, Ex. A).  Specifically, Provision 18.01, entitled "Events

of Default," provides, in relevant part, that

> [i]n the event of [SBP's] dissolution … then at any time
> after the occurrence of any such event … CBS shall have
> the option by notice to require that the Artist render
> [her] personal services directly to it for the remaining
> balance of the term of this agreement[.] … In such event
> the Artist shall be deemed substituted for you as a Party
> to this agreement as of the date of CBS'[s] option
> exercise, and, in respect of Master Recordings of the
> Artist's performances recorded subsequently, the
> royalties and any Advances payable hereunder shall be
> reduced to two-thirds of the amounts prescribed in this
> agreement and, as so adjusted, will be payable to the
> Artist[.]

(*Id.*, Ex. A).  Gaynor alleges that SBP was dissolved for several periods between

2002 and 2019.  (*Id.* ¶ 15).[3]  She thus claims that rights under the CBS

Agreement have reverted to her.  (*Id.* ¶ 38).  Of potential note, the CBS

Agreement includes a forum selection clause providing that the agreement

shall be governed by New York law and subject to the jurisdiction of New York

state and federal courts.  (*Id.*, Ex. A).

### c.    Copyright Disputes

Broadly speaking, Gaynor alleges that Diamond falsely listed himself as a

co-author of her song *More Than Enough*, despite her never having written a

song with Diamond.  (FAC ¶ 44; *id.*, Ex. F).  She further alleges that SBP, SBM,

---

[3]    Gaynor alleges that SBP was dissolved by proclamation on June 26, 2002, followed by
an annulment of dissolution in November 2003.  (FAC ¶ 15).  She further alleges that
SBP was dissolved again by proclamation in January 2012 and remained dissolved
until July 2019.  (*Id.*).

and OBM have falsely "asserted in catalogues issued by them that they own the masters of [several of] Gaynor's songs although SONY appears to own the masters." (*Id.* ¶ 49).

### 3. Randall's Allegations

Robin Randall ("Randall") collaborated with her mother, Judithe Randall ("Judithe"), as a songwriting team until Judithe's death on April 3, 2002. (FAC ¶ 27). Their jointly-created works include: *Forever Friends*; *Just Friends*; *Close My Eyes*; and *Two Souls, One Breath*. (*Id.* ¶ 59; *id.*, Ex. D). These compositions and recordings are registered with the U.S. Copyright Office. (*Id.* ¶ 69). As an executor of Judithe's estate, Randall claims to be the rightful owner of her mother's copyrighted compositions. (*Id.*).

Between April 2000 and May 2001, SBM entered into several copyright agreements with Judithe and Robin Randall, which agreements included the assignment and sale of the copyrights for the following compositions: (i) *Forever Friends* (signed April 21, 2000);[4] (ii) *Close My Eyes* (signed April 21, 2000); (iii) *Just Friends* (signed May 25, 2000); and (iv) *Two Souls, One Breath* (signed May 16, 2001). (*See* FAC ¶ 59; *id.*, Ex. B, C). The agreements for *Close My Eyes*, *Just Friends*, and *Two Souls, One Breath* contain forum selection clauses stating:

> This Agreement has been entered into in, and shall be interpreted in accordance with the laws of the State of California. Any action seeking the interpretation and/or enforcement of this Agreement shall be heard

---

[4] The copyright assignment agreement refers to the composition as "*Friends Forever*," but the song is otherwise referred to as "*Forever Friends*." (*See* FAC ¶ 59; *id.*, Ex. B). The Court assumes that the references are to the same composition.

only in the State or Federal Courts situated in Los
Angeles County, both parties hereby submitting to the
jurisdiction of such courts for such purpose.

(*Id.*, Ex. B, C).  However, as described below, Randall alleges that all of these
copyright agreements are fraudulent.

### a.     Alleged Mental Incapacity

Randall contends that her mother was "significantly ill and
incapacitated" when the copyright agreements were executed.  (FAC ¶ 60).
According to Randall, in or about the beginning of 2000, Judithe began to show
significant signs of mental illness and was placed under medical care.  (*Id.*).
She was subsequently diagnosed with paranoid schizophrenia and bipolar
disorder.  (*Id.* ¶ 61).  In April 2001, Judithe was admitted to the Thalians Clinic
at Cedars-Sinai Medical Center, an inpatient psychiatric hospital in Los
Angeles.  (*Id.* ¶¶ 61, 65).  Randall alleges that her mother was "hospitalized in
the inpatient psychiatric hospital during the 2000-2002 period," and contends
that Diamond visited Judithe, "during which time several agreements were
signed."  (*Id.*).  Randall maintains that her mother could not have signed any
agreements unless Diamond visited her, as Randall would otherwise have been
present or would have been required to supervise the signing.  (*Id.* ¶ 66).

### b.     Alleged Forgery of Randall's Signature

Although her signature appears on the copyright agreements, Randall
insists that she did not sign any agreements with Diamond or the corporate
Defendants.  (*See* FAC, Ex. B, C; *id.* ¶ 62).  She instead alleges that "Judithe
Randall was coerced into signing not only her name but Robin Randall[']s."  (*Id.*

¶ 61).  Diamond denies coercing Judithe Randall and states that Judithe always appeared to be of sound mind.  (Diamond Second Decl. ¶¶ 4-5).  Specifically, Diamond asserts that he "never met Judithe Randall, let alone conducted business with her, while she was in a hospital of any sort."  (*Id.* ¶ 5).  However, Diamond does not address Randall's allegation that her signatures on the agreements were forged.

### c.    False Authorship Claims

Separately, Randall alleges that Diamond fraudulently listed himself as a co-writer and owner on several of Randall's and Judithe's songs, despite not being involved in their creation.  (FAC ¶ 68).

## B.    Procedural Background

Plaintiffs commenced this action by filing their initial complaint on July 26, 2024.  (Dkt. #1).  On October 17, 2024, Defendants filed a pre-motion letter indicating their intent to file a motion to dismiss the complaint and requesting a conference to discuss this anticipated motion.  (Dkt. #21).  Plaintiffs filed a letter indicating their intent to oppose the motion on the merits on October 21, 2024.  (Dkt. #22).  The Court set a pre-motion conference for November 15, 2024.  (Dkt. #23).  At that conference, the Court set a deadline for Plaintiffs to file an amended complaint, as well as a briefing schedule for Defendants' motion to dismiss.  (*See* November 15, 2024 Minute Entry).

On December 13, 2024, Plaintiffs filed an amended complaint (the "FAC"), the operative pleading in this action.  (Dkt. #30).  After the Court granted a joint extension request (*see* Dkt. #31-32), Defendants filed their

motion to dismiss and alternative motion to transfer venue, with supporting
documents, on January 17, 2025 (Dkt. #33).  Plaintiffs filed their memorandum
of law in opposition (Dkt. #36), with supporting documents (Dkt. #35, 37-39),
on February 21, 2025.  Defendants then filed their reply memorandum of law,
with additional supporting documents, on March 7, 2025.  (Dkt. #40).

## DISCUSSION

### A.    Applicable Law

"Where district courts are presented with both a motion to dismiss,
under Fed. R. Civ. P. 12(b)(6), and a motion to transfer venue, under 28 U.S.C.
§ 1404(a), they commonly address the venue motion first, and, where transfer
is appropriate, leave the motion to dismiss to be decided by the transferee
court." *Schweitzer* v. *Nevels*, 669 F. Supp. 3d 242, 246 (S.D.N.Y. 2023); *see
also Allied World Surplus Lines Ins. Co.* v. *Elamex USA, Corp.*, No. 23 Civ. 9992
(LJL), 2024 WL 2212948, at *3 (S.D.N.Y. May 16, 2024) (collecting cases).
Accordingly, the Court begins its analysis with the motion to transfer venue.[5]

Defendants seek transfer of the case to the Central District of California
pursuant to 28 U.S.C. § 1404.[6]  Section 1404(a) provides that, "[f]or the

---

[5]    Because the Court ultimately grants Defendants' motion to transfer venue, it does not
set forth the legal standards applicable to Defendants' alternative motion to dismiss
under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

[6]    In their notice of motions, Defendants submit that they object to venue in this District
under both 28 U.S.C. § 1404(a) and Federal Rule of Civil Procedure 12(b)(3).  (Dkt. #33).
Rule 12(b)(3) provides that a defendant may move to dismiss, rather than transfer, a
complaint on the grounds of improper venue.  Fed. R. Civ. P. 12(b)(3).  Defendants
nominally move to dismiss the FAC for improper venue pursuant to a forum selection
clause requiring that any action seeking to enforce several of the agreements at issue
must be brought in state or federal courts in Los Angeles County, California.  (Def. Br.
6-13).  However, Defendants later appear to abandon any arguments under Rule
12(b)(3), instead pursuing their motion to dismiss only under Rules 12(b)(1) and
12(b)(6).  (*See id.* at 13 ("Although Defendants deny that the Southern District of New

convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  In making determinations of convenience under Section 1404(a), district courts have "broad discretion" to consider "notions of convenience and fairness ... on a case-by-case basis." *D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

When deciding a motion to transfer pursuant to § 1404(a), courts undertake a two-step inquiry.  *See Enigma Software Grp. USA, LLC* v. *Malwarebytes Inc.*, 260 F. Supp. 3d 401, 407 (S.D.N.Y. 2017).  *First*, courts must determine if the action "might have been brought in the district to which transfer is sought."  *Smart Skins LLC* v. *Microsoft Corp.*, No. 14 Civ. 10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015) (internal quotation marks omitted).  A case might have been brought in another forum "if 'at the time the suit was brought, the defendants were subject to jurisdiction and

---

York has general jurisdiction over them, rather than go through a lengthy jurisdictional and venue analysis, Defendants simply request the Court exercise its discretion and transfer the case to its natural venue — the Central District of California[.]")).  The Court understands Defendants to have voluntarily abandoned any arguments that venue is improper in this District and will therefore address Defendants' motion to transfer pursuant to § 1404(a), and weigh the forum selection clause in the context of that analysis.

To the extent Defendants have not abandoned their Rule 12(b)(3) motion, that rule is not the proper vehicle for their gripe in light of their alternative § 1404(a) transfer motion.  "A Rule 12(b)(3) motion to dismiss for improper venue is not the correct procedural mechanism to enforce a forum selection clause.  Instead, a forum selection clause that identifies both a federal and state forum is enforceable by a motion to transfer venue pursuant to 28 U.S.C. § 1404(a)."  *Espire Ads LLC* v. *TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 246 (S.D.N.Y. 2023) (citing *Atl. Marine Constr. Co.* v. *U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013)).  For this independent reason, the Court construes Defendants' motion as one under § 1404(a), and not Rule 12(b)(3).

venue was proper' in that district." *Id.* (quoting *Giuliani, S.p.A.* v. *Vickers, Inc.*, 997 F. Supp. 501, 502 (S.D.N.Y. 1998)).

*Second*, the court must determine "whether the convenience of the parties and witnesses and the interests of justice favor transfer." *In re Seroquel XR (Extended Release Quetiapine Fumarate) Litig.*, No. 19 Civ. 8296 (CM), 2020 WL 5587416, at *3 (S.D.N.Y. Aug. 12, 2020). As a general matter, § 1404(a) affords "wide latitude" for transfers. *Bent* v. *Zounds Hearing Franchising, LLC*, No. 15 Civ. 6555 (PAE), 2016 WL 153092, at *3 (S.D.N.Y. Jan. 12, 2016) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)). Where the parties agree that an action *could* have been brought in the transferee district, the court must determine that transfer is an appropriate exercise of its discretion. *Id.* (citing *Robertson* v. *Cartinhour*, No. 10 Civ. 8442 (LTS) (HBP), 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011)). Courts in this Circuit have identified the following non-exhaustive factors as relevant for conducting a transfer inquiry:

> [i] the convenience of the witnesses; [ii] the convenience of the parties; [iii] the location of relevant documents and the relative ease of access to sources of proof; [iv] the locus of operative facts; [v] the availability of process to compel the attendance of unwilling witnesses; [vi] the relative means of the parties; [vii] the forum's familiarity with governing law; [viii] the weight accorded to plaintiff's choice of forum; and [ix] trial efficiency and the interests of justice.

*Enigma Software Grp.*, 260 F. Supp. at 407 (quoting *Everlast World's Boxing Headquarters Corp.* v. *Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013)). "There is 'no rigid formula for balancing these factors and no single one

of them is determinative.'" *Power Play 1 LLC* v. *Norfolk Tide Baseball Club, LLC*, No. 17 Civ. 4831 (WHP), 2018 WL 357304, at *4 (S.D.N.Y. Jan. 9, 2018) (quoting *Citigroup Inc.* v. *City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000)).  Instead, courts are to exercise their "broad discretion" when deciding whether to transfer venue, conducting evaluations on a "case-by-case basis." *Id.*  Further, when evaluating these factors, courts "may consider factual material outside the pleadings." *Id.*

As a general matter, a "[p]laintiff's choice of forum should not be disturbed unless the balance of the factors tips heavily in favor of a transfer." *MasterObjects, Inc.* v. *Amazon.com, Inc.*, No. 20 Civ. 3478 (PKC), 2020 WL 6075528, at *1 (S.D.N.Y. Oct. 15, 2020); *see also Lykes Bros. Steamship Co.* v. *Sugarman*, 272 F.2d 679, 681 (2d Cir. 1959) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (internal citations omitted)).  The moving party thus bears the burden of making "a clear and convincing showing that the balance of convenience favors defendant['s] choice" of forum. *MasterObjects*, 2020 WL 6075528, at *1 (internal quotation marks omitted) (alteration in original) (quoting *Hubbell Inc.* v. *Pass & Seymour, Inc.*, 883 F. Supp. 955, 962 (S.D.N.Y. 1995)); *see also N.Y. Marine & Gen. Ins. Co.* v. *Lafarge N. Am., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010) ("Although we have never explicitly approved a district court's use of the 'clear and convincing evidence' standard in ruling on a motion to transfer venue, the propriety of that standard to transfer-motions is evident.").  Where the moving party makes such a showing, the court may

12

transfer the matter in the interest of justice.  *Garcia* v. *Pearson Educ., Inc.*, No. 15 Civ. 7289 (KPF), 2016 WL 5921083, at *5 (S.D.N.Y. Oct. 7, 2016) (citing *Solar* v. *Annetts*, 707 F. Supp. 2d 437, 441-42 (S.D.N.Y. 2010)).

The court's "calculus changes when the parties' contract contains a *valid* forum selection clause[.]"  *ESI Cases & Accessories, Inc.* v. *Home Depot Prod. Auth., LLC*, No. 18 Civ. 11507 (JMF), 2019 WL 4256364, at *2 (S.D.N.Y. Sept. 9, 2019) (emphasis added).  In that situation, the parties have "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."  *Atl. Marine Const. Co.* v. *U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013). When reviewing a motion to transfer that implicates a forum selection clause, the court "need not consider arguments about the parties' private interests, and may consider arguments about public-interest factors only."  *Sadiant, Inc.* v. *Penstock Consulting, LLC*, No. 23 Civ. 7872 (KPF), 2024 WL 2847195, at *13 (S.D.N.Y. May 30, 2024) (internal quotation marks omitted and alterations adopted) (quoting *Atl. Marine*, 571 U.S. at 64); *see also Espire Ads LLC* v. *TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 246-47 (S.D.N.Y. 2023).  Moreover, the party acting in violation of the forum selection clause "bear[s] the burden of showing that public-interest factors overwhelmingly disfavor" litigating in the forum designated in the forum selection clause.  *Atl. Marine*, 571 U.S. at 67. Because the court is left only to consider public-interest factors, "the practical result is that the forum-selection clauses should control except in unusual cases."  *Id.* at 64.

### B.    Analysis

The Court begins by determining whether any enforceable forum selection clause governs this action.  Finding that no such clause applies, the Court then proceeds to the two-step analysis under 28 U.S.C. § 1404(a): (i) whether the action could have been brought in the proposed transferee court, and (ii) whether transfer serves the convenience of parties and witnesses and is in the interests of justice.  *See Megna* v. *Biocomp Lab'ys Inc.*, 220 F. Supp. 3d 496, 497 (S.D.N.Y. 2016).  Ultimately, the Court concludes that this action could have been brought in the Central District of California and that transfer is warranted.

#### 1.    No Enforceable Forum Selection Clause Governs Plaintiffs' Claims

Because the enforceability of a forum selection clause significantly affects the transfer analysis under 28 U.S.C. § 1404(a), *see, e.g.*, *ESI Cases & Accessories*, 2019 WL 4256364, at *2 (referring to the weight given to "valid" forum selection clauses in a § 1404(a) analysis), the Court first evaluates whether either Plaintiff's claims are subject to an enforceable forum selection clause.  For the reasons discussed below, the Court finds that neither Randall's nor Gaynor's claims are governed by an enforceable forum selection clause.

##### a.    The Court Declines to Enforce the Forum Selection Clauses in the Randall Agreements

The Second Circuit has held that forum selection clauses are presumptively enforceable where the party moving under § 1404 can demonstrate that: (i) the clause was reasonably communicated to the party

14

challenging enforcement; (ii) the clause is mandatory, rather than permissive, in nature; and (iii) the clause encompasses the plaintiff's claims. *Phillips* v. *Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). An opposing party must (iv) make a "sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching," to rebut this presumption. *Martinez* v. *Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (quoting *Phillips*, 494 F.3d at 383-84 (quoting *M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972))). To decide "whether an otherwise mandatory and applicable forum clause is *enforceable*" at step four in this analysis, courts apply federal law. *Martinez*, 740 F.3d at 217. Courts in this Circuit will "decline to enforce a forum selection clause under *Bremen* if:

> "[i] its incorporation was the result of fraud or overreaching; [ii] the law to be applied in the selected forum is fundamentally unfair; [iii] enforcement contravenes a strong public policy of the forum" in which suit is brought; "or [iv] trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court."

*Id.* at 228 (quoting *Phillips*, 494 F.3d at 392).

The copyright agreements purportedly executed between SBM and the Randalls for *Close My Eyes*, *Just Friends*, and *Two Souls, One Breath* contain forum selection clauses stating that any actions related to the agreement may only be heard in state or federal courts in Los Angeles County, California. (*See* FAC ¶ 59; *id.*, Ex. B, C). However, Randall challenges the validity of these agreements in their entirety by alleging fraud and forgery.

15

"A claim of fraud in the inducement of a contract is insufficient to invalidate a forum selection or choice-of-law clause found in that contract. Rather, it is the inclusion of those specific clauses plaintiffs seek to avoid that must have been induced by fraud." *Stamm* v. *Barclays Bank of N.Y.*, 960 F. Supp. 724, 729 (S.D.N.Y. 1997). "If, however, the alleged fraud is 'so great as to vitiate the entire agreement[,]' then the agreement's forum selection clause will not be enforced." *Chen* v. *Cenntro Elec. Grp. Ltd.*, No. 22 Civ. 7760 (VEC), 2023 WL 2752200, at *2 (S.D.N.Y. Mar. 31, 2023) (quoting *Signature Fin. LLC* v. *Neighbors Glob. Holdings, LLC*, 281 F. Supp. 3d 438, 452 (S.D.N.Y. 2017)).

Here, Randall alleges that she never signed the agreements containing the forum selection clauses and that her signatures were forged. (*See* FAC ¶¶ 61-62). "Under New York State law and general contract law, a forged signature renders a contract void *ab initio*. Because there can be no meeting of the minds of the parties when a forgery has been perpetrated, no contract existed in the case at hand." *Opals on Ice Lingerie* v. *Bodylines Inc.*, 320 F.3d 362, 370 (2d Cir. 2003) (alterations adopted) (quoting *Orlosky* v. *Empire Sec. Sys.*, 657 N.Y.S.2d 840, 842 (3d Dep't 1997)). "Although a [party] seeking to *invalidate* a forum-selection clause based on fraud must meet a heightened pleading standard, that requirement" does not apply where a party "seeks to *enforce* a forum-selection clause in an agreement that" is alleged to be "void from its inception." *Chen*, 2023 WL 2752200, at *4 (internal citation omitted); *see also id.* (citing *Jalin Realty Cap. Advisors, LLC* v. *A Better Wireless, NISP, LLC*, No. 11 Civ. 165 (JRT) (LIB), 2012 WL 838439, at *4 n.2 (D. Minn. Mar. 12,

16

2012) (treating a forum selection clause as invalid on a motion to transfer venue where the non-movant alleged facts that, "if proven, may [have been] sufficient to vitiate" the agreement containing the forum selection clause).

Randall pleads her fraud claims with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure, and thus to show facts sufficient to vitiate the agreements containing the forum selection clause. "[T]o overcome the presumed validity of the [forum selection clause], plaintiffs must plead specific fraudulent acts or statements by which defendants induced their consent to these clauses. As with all claims of fraud, plaintiffs' claims must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure." *Jalee Consulting Grp., Inc.* v. *XenoOne, Inc.*, 908 F. Supp. 2d 387, 394 (S.D.N.Y. 2012) (quoting *Stamm*, 960 F. Supp. at 729-30). Randall alleges sufficient facts as to who coerced forgery (Diamond), when (April 2000 through May 2001), and where (a particular medical center). (FAC ¶¶ 61-64; *id.*, Ex. B). Accordingly, the Court will treat the forum selection clauses in the Randall agreements as invalid for purposes of its § 1404(a) analysis.

### b. The Forum Selection Clause in the CBS Agreement Does Not Control

The CBS Agreement, by contrast, provides that controversies regarding the agreement shall be subject to the jurisdiction of New York state and federal courts. (Pl. Opp. 2-3; FAC, Ex. A). However, the Court finds that this clause does not govern the instant action, inasmuch as Gaynor's claims fall outside its scope. Therefore, the Court gives it no weight in its § 1404(a) analysis.

To review, under the third prong of the *Phillips* analysis, courts consider "whether the claims and parties involved in the suit are subject to the forum selection clause." *Phillips*, 494 F.3d at 383 (citing *Roby* v. *Corp. of Lloyd's*, 996 F.2d 1353, 1358-61 (2d Cir. 1993)). To be subject to the CBS Agreement's forum selection clause, the claims must "regard[ ] this agreement." (FAC, Ex. A). Yet none of Gaynor's causes of action relates to, or even directly references, the CBS Agreement. The only passing reference appears in the form of Gaynor's allegation that SBP's alleged temporary dissolution may have triggered royalty rights to revert to her under Provision 18.01 of the agreement. (*Id.* ¶ 38). However, Provision 18.01 applies only where SBP dissolves prior to delivering the required master recordings and CBS exercises its option for Gaynor to assume SBP's contractual obligations. (*Id.*, Ex. A). Gaynor does not allege, nor does she provide any facts to suggest, that SBP dissolved before delivering the recordings or that CBS exercised its option. Accordingly, Gaynor's claims do not "regard" the CBS Agreement, and the forum selection clause does not apply to the claims in the FAC.

## 2. This Action Could Have Been Brought in the Central District of California

Having found no presumptively enforceable forum selection clause, the Court turns to whether venue would be proper in the proposed transferee district. A case might have been brought in the Central District of California "if 'at the time the suit was brought, the defendants were subject to jurisdiction and venue was proper' in that district." *Smart Skins LLC*, 2015 WL 1499843, at *4 (quoting *Giuliani, S.p.A.*, 997 F. Supp. at 502).

Defendants are subject to the jurisdiction of the Central District of California, as Diamond resides in the Central District of California and SBP has its headquarters and principal place of business in California.  (FAC ¶ 10; Def. Br. 2).  *See Ford Motor Co.* v. *Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-59 (2021) (observing that individual defendants are subject to general jurisdiction in the state in which they reside, while corporate defendants are subject to general jurisdiction in their place of incorporation and principal place of business); *see also, e.g., Everlast*, 928 F. Supp. 2d at 743 ("Because both [defendants] reside in Kansas, venue would be proper in the District of Kansas.").  Accordingly, both Diamond and SBP are subject to general jurisdiction in California.

The remaining defendants — SBR, SBM, and OBM — are dissolved New York corporations.  The Court declines to decide whether these entities should be dismissed from the case, leaving that determination to the transferee court.  However, if the transferee court determines that these entities remain operational, their principal places of business would be in California, because Diamond declared that he operated these entities, as President, from California, sometime after 1989.  (Diamond Decl. ¶¶ 16-21).  *See Hertz Corp.* v. *Friend,* 559 U.S. 77, 92-93 (2010) (defining "principal place of business" as "the place where a corporation's officers direct, control, and coordinate the corporation's activities").  Therefore, even assuming SBR, SBM, and OBM remain subject to suit, they, too, would be subject to general jurisdiction in California.

19

Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," 28 U.S.C. § 1391(b)(1), and accordingly venue is proper in the Central District of California.  Therefore, the Court is satisfied that this action could have been brought in the Central District of California and will next consider whether the convenience of the parties and witnesses, and the interests of justice, favor transfer.

### 3.    Transfer to the Central District of California Is Appropriate

The Court considers Defendants' request in light of the multi-factor balancing test established for evaluating motions to transfer.  Ultimately, the Court finds that, when viewed together, the relevant factors favor the transfer of this action to the Central District of California, and thus the Court exercises its discretion to order such transfer.  Specifically, the Court finds that four of the nine factors favor transfer, four factors are neutral, and only one factor favors retention of the case in this District.

### a.    Factors Favoring Transfer

The Court finds that several factors favor transfer of venue, including: (i) the convenience of witnesses; (ii) the locus of operative facts; (iii) the convenience of parties; and (iv) the location of relevant documents and evidence.

### i.    Convenience of Witnesses

"The convenience of witnesses is an important consideration — it has often been described as the single most important § 1404(a) factor." *SBAV LP*

20

v. *Porter Bancorp, Inc.*, No. 13 Civ. 372 (PAE), 2013 WL 3467030, at *7 (S.D.N.Y. July 10, 2013) (citing *Filmline (Cross-Country) Prods., Inc.* v. *United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989)).  "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Steck* v. *Santander Consumer USA Holdings Inc.*, No. 14 Civ. 6942 (JPO), 2015 WL 3767445, at *3 (S.D.N.Y. June 17, 2015) (quoting *Liberty Mut. Ins. Co.* v. *Fairbanks Co.*, 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014)).

Defendants identify a number of witnesses whose testimony is likely to be relevant and who are based in California, including SBP officers and employees.  (Def. Br. 2, 14; Diamond Decl. ¶ 8).  None of Defendants' witnesses is based in New York.  (Def. Br. 14).  Conversely, Plaintiffs do not identify any individuals they intend to call as witnesses.  And in any event, the most important witness in this case is likely Diamond himself, who lives in the Central District of California.  *See Bare Body Laser Spa, Inc.* v. *Billings*, No. 23 Civ. 9951 (PAE), 2024 WL 3445333, at *7 (S.D.N.Y. July 17, 2024) (collecting cases supporting transfer where the most critical testimony is likely to be provided by a defendant who resides in the transferee district).  Thus, the Court concludes that the convenience of the witnesses weighs in favor of transfer.

### ii.    Locus of Operative Facts

The locus of operative facts is another "primary factor in determining a section 1404(a) motion to transfer."  *Delacruz* v. *Giermak*, No. 21 Civ. 3877

21

(ALC) (OTW), 2021 WL 5871424, at *2 (S.D.N.Y. Nov. 12, 2021) (quoting *Billing* v. *Com. One, Inc.*, 186 F. Supp. 2d 375, 377 (S.D.N.Y. 2002)).  Courts find that this factor "substantially favors transfer from this district when a party 'has not shown that any of the operative facts arose in the Southern District of New York.'"  *SEC* v. *Hill Int'l, Inc.*, No. 20 Civ. 447 (PAE), 2020 WL 2029591, at *4 (S.D.N.Y. Apr. 28, 2020) (quoting *SBAV,* 2013 WL 3467030, at *4).  Both this factor and the location of material witnesses bear on where the "center of gravity" of the action rests.  *See Am. Steamship Owners Mut. Prot. & Indem. Ass'n* v. *Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007), *aff'd sub nom. N.Y. Marine & Gen. Ins. Co.* v. *Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010).

To determine the locus of operative facts, a court is required to look to the location of the events from which a claim arises, and to focus on the degree of the relationship between the chosen forum and the cause of action.  *Hill Int'l,* 2020 WL 2029591, at *4.  Here, none of the key events giving rise to Randall's claims occurred in New York.  The only connection to this District is that SBM, the counterparty to the disputed agreements, is a New York corporation.  But a corporation's place of incorporation or headquarters alone is not dispositive.  *See Calabrese* v. *Teoco Corp.*, 637 F. Supp. 2d 160, 165 (S.D.N.Y. 2009) (holding that a defendant corporation's headquarters did not necessarily require a finding that the forum was the locus of operative facts).  The operative events — namely, the execution of the allegedly fraudulent contracts between SBM and Judithe Randall — occurred in California.  (*See* FAC ¶ 61).

22

Accordingly, New York has no material connection to Randall's causes of action.

As to Gaynor's claims, Plaintiffs advance several arguments against transfer from this District, including:

> (i) [T]he original contracts between Plaintiffs and Defendants were negotiated and executed in New York; (ii) Defendants' corporate entities were incorporated and operated in New York at the time of contract formation; and (iii) [SBP], the remaining active entity that Defendants[ ] allege owns the relevant assets, is a New York corporation subject to New York law.  Additionally, Defendants have presented no evidence in contradiction of Plaintiffs' well-supported allegation that Defendants continue to conduct business in New York, including marketing and commercial transactions directly involving Plaintiffs' works and intellectual property.

(Pl. Opp. 5-6).  These allegations, however, fall short.  "In a breach-of-contract case, the focus is on the locations 'where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.'"  *Stonegardens Advisory LLC* v. *DeepMedia.AI*, No. 24 Civ. 2178 (PAE), 2024 WL 5047628, at *12 (S.D.N.Y. Dec. 9, 2024) (quoting *Ivy Soc'y Sports Grp., LLC* v. *Baloncesto Superior Nacional*, No. 08 Civ. 8106 (PGG), 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009)).  However, Plaintiffs have not produced — in connection with their FAC or in opposition to the motion to transfer — any written contract between Gaynor and Defendants, let alone one executed in New York.  Even if such a contract exists, any breach occurring since 1989 would likely have taken place in California, where Diamond resides and has conducted business.  (*See* Def. Br. 16).  Furthermore, although SBP was incorporated in New York, its headquarters and employees are in Los

Angeles, California, and it has not maintained a physical location in New York in more than 25 years.  (FAC ¶ 13; Diamond Decl. ¶¶ 4-5).  Lastly, even assuming that Defendants still conduct some commercial transactions in New York related to Plaintiffs' works, "courts have uniformly recognized that this factor does not require that all events must have occurred in the transferee venue — only that the most crucial events occurred there."  *Bare Body Laser Spa*, 2024 WL 3445333, at *9 (citing *Pence* v. *Gee Grp., Inc.*, 236 F. Supp. 3d 843, 855 (S.D.N.Y. 2017)).  That is not the case here.

In sum, the locus of operative facts underlying both Plaintiffs' claims, including in particular Randall's alleged fraudulent contracts and Gaynor's alleged breach of contract, is Los Angeles, California.  The Court therefore concludes that this factor weighs in favor of transfer, as the center of gravity of the litigation — "the 'core determination' under § 1404(a)" — is the Central District of California.  *McGraw-Hill Cos.* v. *Jones*, No. 12 Civ. 7085 (AJN), 2014 WL 988607, at *6 (S.D.N.Y. Mar. 12, 2014) (citation omitted).

### iii.    Convenience of the Parties

Although this factor is considered "less important than the previous two factors," the Court concludes that the convenience of the parties also weighs in favor of transfer.  *SEC* v. *Am. Renal Assoc. Holdings*, No. 21 Civ. 10366 (JPO), 2022 WL 1166087, at *4 (S.D.N.Y. Apr. 20, 2022).  "A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer."  *SBAV*, 2013 WL 3467030, at *8 (quoting 15 Charles Alan Wright & Arthur R. Miller,

*Federal Practice and Procedure* § 3849 (3d ed. 1998)).  "[A] motion to transfer 'should not be granted if all transfer would accomplish is to shift the inconvenience[ ] from one party to the other.'"  *Bare Body Laser Spa*, 2024 WL 3445333, at *9 (quoting *Guardian Life Ins. Co. of Am.* v. *Hernandez*, No. 11 Civ. 2114 (SAS), 2011 WL 3678134, at *3 (S.D.N.Y. Aug. 22, 2011)).

Here, Defendants have adequately shown that litigating in New York imposes a significant burden, particularly on Diamond, who claims that his age and health conditions make cross-country travel difficult.  (*See* Def. Br. 15; Diamond Decl. ¶¶ 4, 15).  Moreover, Defendants have shown that transfer would not substantially burden Plaintiffs.  As Defendants note, all the parties except for Gaynor — including Randall — are based in California.  (Def. Br. 15; FAC ¶ 9).  Thus, however the Court resolves the motion to transfer, one plaintiff would be required to travel across the country if the case were to proceed to trial.  Gaynor argues that her age poses a problem, too, as she is "nearing her eighties and would have equal or greater difficulties if forced to prosecute the action outside of New York."  (Pl. Opp. 7).  However, her claim is undermined by her own Complaint, which states that "Gloria continues to tour the world with her ten-piece band performing in the USA, UK, Europe, South America, and beyond."  (FAC ¶ 25).  These facts suggest that Gaynor is able to travel internationally, and, thus, that a domestic court appearance in California would not substantially inconvenience her.

Because transferring this case to the Central District of California would promote convenience for Defendants without substantially inconveniencing

Plaintiffs, transferring this action would not amount to shifting the inconvenience from one side to the other, and thus the Court finds that this factor favors transfer.

### iv. Location of Documents and Relative Ease of Access to Sources of Proof

In this "era of electronic documents," where copies of documents can be easily made and transported, "this factor assumes much less importance than it did formerly." *ESPN, Inc.* v. *Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008). Accordingly, "the location of documents is entitled to little weight unless defendant makes a 'detailed showing [of] the burden it would incur absent transfer.'" *Indian Harbor Ins. Co.* v. *Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 401 n.2 (S.D.N.Y. 2005) (second alteration in original) (quoting *Royal Ins. Co. of Am.* v. *Tower Recs., Inc.*, No. 02 Civ. 2612 (PKL), 2002 WL 31385815, at *6 (S.D.N.Y. 2002)).

Defendants assert that all relevant documents and sources of proof are located in California. (Def. Br. 15). Specifically, they claim that the vast majority of SBP's books and records, spanning back to 1970, exist only in physical form in California and are not digitized, making their transport logistically difficult. (*Id.*). Plaintiffs, conversely, have not identified any relevant documents or sources of proof that are in New York. Given Defendants' specific representation regarding the non-digitized nature and physical location of their records, the Court finds that this factor slightly favors transfer.

26

### b.    Neutral Factors

The following factors are neutral and, as such, do not substantially affect the transfer analysis: (i) trial efficiency and the interests of justice; (ii) relative means of the parties; (iii) the availability of process to compel attendance; and (iv) the forum's familiarity with the governing law.

### i.    Trial Efficiency and the Interests of Justice

Because this action is still "in its infancy," the Court finds that, on balance, there will be no efficiency lost in its transfer to the Central District of California. *Steck*, 2015 WL 3767445, at *9 (citation omitted); *see also YLD Ltd.* v. *Node Firm, LLC*, No. 15 Civ. 855 (JPO), 2016 WL 183564, at *4 (S.D.N.Y. Jan. 14, 2016) ("Given that this case has not proceeded past a dispositive motion, there is no lost efficiency in transferring the case to a different judge."). No discovery has taken place, and the Court has not ruled on the merits of the claims. This factor is therefore neutral.

### ii.    Relative Means of the Parties

"In determining whether the relative means of the parties weighs in favor of a transfer, 'a court should determine whether a party's financial situation would meaningfully impede its ability to litigate this case in either forum.'" *AIG Fin. Prods. Corp.* v. *Pub. Util. Dist. No. 1 of Snohomish Cnty., Wash.*, 675 F. Supp. 2d 354, 371-72 (S.D.N.Y. 2009) (quoting *Truk Int'l Fund, LP* v. *Wehlmann*, No. 08 Civ. 8462 (PGG), 2009 WL 1456650, at *7 (S.D.N.Y. May 20, 2009)). "A significant financial disparity between the parties may support or discourage transfer of venue." *YLD*, 2016 WL 183564, at *4.

27

Defendants allege that litigating in this District will subject them to a significant financial burden, including "the costs of travel and lodging for [Diamond], his counsel, and other individuals." (Def. Br. 15; Diamond Decl. ¶ 15). However, "a party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." *Am. Eagle Outfitters, Inc.* v. *Tala Bros. Corp.*, 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006) (citation omitted). Defendants have not provided any such documentation, and the Court thus concludes that Defendants have not made the required showing that it would be "unduly burdensome" to litigate in this District. *YLD*, 2016 WL 183564, at *4. This factor will thus be considered neutral.

### iii.    Availability of Process

Under Rule 45 of the Federal Rules of Civil Procedure, a district court generally cannot issue a subpoena that would compel a non-party witness to travel more than 100 miles or out of the state in which the witness resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1). Where there is no indication that non-party witnesses will refuse to appear or testify, courts generally consider the unavailability of process to compel the attendance of witnesses to be a neutral factor. *See Nuss* v. *Guardian Life Ins. Co. of Am.*, No. 20 Civ. 9189 (MKV), 2021 WL 1791593, at *7 (S.D.N.Y. May 5, 2021) (collecting cases). Neither Plaintiffs nor Defendants have identified any prospective non-party witnesses who are unwilling to appear or testify. (*See*

28

Def. Br. 14).[7]  Moreover, even if a witness declines to testify, "deposition

testimony is a viable alternative." *NBA Props., Inc.* v. *Salvino, Inc.*, No. 99 Civ.

11799 (AGS), 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000) (collecting

cases).  This factor is thus neutral and has little bearing on the Court's

determination.

### iv.    Familiarity with the Governing Law

When undertaking a § 1404(a) analysis of different federal district courts,

the putative forum's familiarity with the governing law is "one of the least

important factors." *Posven, C.A.* v. *Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391,

405 (S.D.N.Y. 2004).  Where an action raises questions of federal law, "either

forum is equally capable of hearing and deciding those questions." *Berger* v.

*Cushman & Wakefield of Pa., Inc.*, No. 12 Civ. 9224 (JPO), 2013 WL 4565256,

at *12 (S.D.N.Y. Aug. 28, 2013) (quoting *Dostana Enters. LLC* v. *Fed. Express*

*Corp.*, No. 00 Civ. 747 (RWS), 2000 WL 1170134, at *6 (S.D.N.Y. Aug. 16,

2000)).  But to the extent that a case raises state-law issues, "then the greater

familiarity of the federal court sitting in that forum militates somewhat in favor

of transfer." *Dostana Enters.*, 2000 WL 1170134, at *6 (citations omitted).

Plaintiffs raise federal law claims under the Copyright Act, as well as

common-law claims for breach of contract, breach of fiduciary duty, fraud,

misrepresentation, unjust enrichment, and a declaratory judgment for contract

termination and recission.  (*See* FAC ¶¶ 78-150).  It appears likely that

---

[7]    Defendants submit that their potential witnesses would be burdened by travel to New York, but they have not suggested that, should transfer be denied, their witnesses would be unwilling to appear or testify in this District.  (*See* Def. Br. 14).

California substantive law will apply to Randall's claims, given that the agreements were allegedly executed in California and all parties reside there. It is not readily apparent whether New York or California law will govern Gaynor's claims. "Regardless, whichever state's law is assumed to apply, this factor 'is typically ... accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states.'" *Bare Body Laser Spa*, 2024 WL 3445333, at *11 (quoting *Fairbanks*, 17 F. Supp. 3d at 398). Accordingly, the Court considers this factor to be neutral.

### c. Factor Opposing Transfer

The Court acknowledges that Plaintiffs' choice of forum weighs against transferring this case. Plaintiffs brought this action in this District, and "[i]t is well settled that the plaintiff's choice of forum is given great weight." *Am. Renal Assoc. Holdings*, 2022 WL 1166087, at *4 (quoting *EasyWeb Innovations, LLC* v. *Facebook, Inc.*, 888 F. Supp. 2d 342, 348 (E.D.N.Y. 2012)); *see also Berman* v. *Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998) (noting that a plaintiff's choice of forum is "generally entitled to considerable weight and should not be disturbed unless the balance of factors is stronger in favor of the defendant"). Nevertheless, "the degree of deference given to a plaintiff's forum choice varies with the circumstances." *Maverick Fund, L.D.C.* v. *Lender Processing Servs., Inc.*, No. 13 Civ. 5474 (DLC), 2013 WL 6467889, at *2 (S.D.N.Y. Dec. 10, 2013) (quoting *Iragorri* v. *United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc)). As relevant here, "[a] plaintiff's choice of forum is accorded less deference where [the] plaintiff does not reside in the chosen

30

forum and the operative events did not occur there." *Bibb* v. *AT&T Corp.*, No. 20 Civ. 8590 (CM), 2020 WL 8512863, at *2 (S.D.N.Y. Dec. 8, 2020) (citing *Iragorri*, 274 F.3d at 72).

Here, neither Plaintiff is at home in this District. (*See* FAC ¶¶ 8-9). Notably, Randall resides in California, where the would-be transferee court is located. (*Id.* at 9). Furthermore, and as discussed above, none of the operative events related to Randall's claims occurred in New York. And with respect to Gaynor, who resides in New Jersey, the facts that (i) the corporate Defendants are incorporated in New York and (ii) operated in New York prior to 1989, and (iii) "Defendants continue to conduct business in New York, including marketing and commercial transactions directly involving Plaintiffs' works," do not establish that New York is the locus of operative facts. (Pl. Opp. 5-6).

The Court will thus not afford Plaintiffs' choice of forum the "significant weight that this factor is typically assigned." *Neil Bros.* v. *World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 334 (E.D.N.Y. 2006); *see also Multiwave Sensor Inc.* v. *Sunsight Instruments, LLC*, No. 16 Civ. 1361 (GHW), 2017 WL 1498058, at *8 (S.D.N.Y. Apr. 26, 2017) ("[T]he operative facts of this case 'have few meaningful connections to the plaintiff's chosen forum,' and thus 'the importance of the plaintiff's choice ... measurably diminishes.'" (quoting *Hoadley* v. *MoneyGram Payment Sys., Inc.*, No. 08 Civ. 11192 (RJS), 2009 WL 2001327, at *3 (S.D.N.Y. July 9, 2009))).

Put differently, while this factor weighs slightly in favor of retaining the action in this District, it "does not come close to shifting the balance of factors

in favor of this [D]istrict." *Everlast*, 928 F. Supp. 2d at 748 (granting motion to transfer venue where "plaintiff's choice of forum is the sole important factor that favors keeping the action in New York").

### d.    Balancing the Factors

In sum, the relevant factors, when viewed together, weigh in favor of transferring this case to the Central District of California. The convenience of the witnesses, locus of operative facts, convenience to the parties, and location of relevant documents factors all favor transfer, and outweigh the only countervailing factor, which is Plaintiffs' choice of forum.[8]

---

[8]    The Court opts to transfer the entire case to the Central District of California. When venue is proper for a plaintiff's claims over some defendants but improper for others, a district court has discretion to either transfer the entire case to a district where venue is proper for all claims, or sever the claims and retain jurisdiction over some while transferring others. 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3827 at 607-09 (3d ed. 1998) (collecting cases). The Court could, for example, transfer only Randall's claims to the Central District of California. However, courts strongly prefer to transfer entire cases rather than engage in piecemeal litigation when all claims can be efficiently adjudicated in a single forum. "[S]evering the claims and litigating the case piecemeal is disfavored when [i] there is a venue that would be proper for all the defendants in which the entire case could be litigated at once, as there is here with California; and [ii] the claims and parties are intertwined, as they are here, and the same issues and witnesses, who are located in both forums, are involved." *Jewell* v. *Music Lifeboat*, 254 F. Supp. 3d 410, 422 (E.D.N.Y. 2017).

Here, venue is proper over all defendants in the Central District of California. *See supra* Section B.2. Additionally, the Court finds that Plaintiffs' claims are sufficiently intertwined to warrant joint adjudication. Both Gaynor's and Randall's claims involve the same Defendants and witnesses, and all claims center on similar alleged breaches of contract and fraudulent conduct by Defendants. While the copyright infringement claims may initially appear distinct from the contract-related claims, they are closely related because the issues of false authorship are intertwined with Diamond's other allegedly fraudulent conduct. Thus, the Court transfers the entire case of the Central District of California. *See, e.g., Cook* v. *UBS Fin. Servs., Inc.*, No. 05 Civ. 8842 (SHS), 2006 WL 760284, at *6 (S.D.N.Y. Mar. 21, 2006) (transferring all of plaintiffs' claims to a single district, rather than retaining venue over one claim and transferring another, to avoid "a substantial waste of both judicial and litigant resources").

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendants' motion to transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404. The Court will not rule on Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), which it leaves for the transferee court to decide. The Clerk of Court is directed to terminate the pending motion at docket entry 33 and transfer this case in its entirety to the United States District Court for the Central District of California.

SO ORDERED.

Dated:    August 5, 2025
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge